UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CORIELLE JOHNSON #324642,

    Plaintiff,

v.                                                   Case No.  2:14-cv-85
                                                   HON.  GORDON J. QUIST

KEN TRIBLEY, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Corielle Johnson, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Tribley, Chappel, Haataja, Frenchen, Casper, and Maki. Plaintiff's allegations arise from a series of events that occurred in June 2013 at Baraga Correctional Facility. Each Defendant is employed at the facility—Tribley is the Deputy Warden; Chappel is a captain; Haataja is a sergeant; Frenchen is a lieutenant; Casper is a registered nurse; and Maki is a corrections officer. ECF 61, PageID.378.

On June 24, 2013, Plaintiff requested his "law books" because he had an upcoming court deadline. ECF 1, PageID.7. Defendant Maki told Plaintiff that he already "passed out" everything. ECF 1, PageID.7. Plaintiff responded that if he did not receive his law books, he would write "them" up for interfering with his access to the courts. ECF 1, PageID.7.

Shortly thereafter, Defendant Maki and Plaintiff had a dispute related to Plaintiff using paper to cover the window of his cell door. ECF 1, PageID.7. Defendant Maki instructed Plaintiff to take down the paper. ECF 1, PageID.7. Plaintiff responded that he would take it

down after he went to the bathroom and finished masturbating. ECF 1, PageID.7. ECF 61-2, PageID.400. Defendant Maki then said that he was going to come into the cell to take the obstructions down and put Plaintiff in restraints. ECF 61-2, PageID.400. Defendant Maki proceeded to make a phone call to the "higher ups," and Defendant Haataja arrived at Plaintiff's cell door. ECF 1, PageID.8. After Plaintiff refused to remove the obstructions, Defendant Maki issued a misconduct ticket for disobeying a direct order. ECF 1, PageID.8. The obstructions were subsequently removed, and Defendant Haataja informed Plaintiff that he was going to be put in restraints. ECF 1, PageID.8.

Defendants Chappel, Frenchen, and Haataja then began the process of moving Plaintiff to the health care area. Plaintiff was strip searched and told that the "use of chemical agents" had been "approved." ECF 1, PageID.8-9. However, no chemical agents were used. ECF 1, PageID.9. Plaintiff was taken to the health care area in his boxers where he was put into soft restraints. ECF 1, PageID.9. Plaintiff was then walked back to his cell. Plaintiff alleges that he was in the restraints for fifteen hours. ECF 1, PageID.9. During this time period, Plaintiff maintains that he was not afforded any food or water, and the restraints were so tight that he could not use the bathroom. ECF 1, PageID.9.

Plaintiff also claims that Defendant Casper failed to attend to his medical needs the next morning. ECF 1, PageID.13. Plaintiff asserts that Defendant Casper failed to check the restraints and repeatedly ignored Plaintiff's requests for medical attention. ECF 1, PageID.13. Instead, during his rounds, Defendant Casper walked away and stated "[you] shouldn't have been jacking off." ECF 1, PageID.13. Plaintiff stated that he was in pain while in restraints and was sore the following days. ECF 61-2, PageID.402. After taking Tylenol, the soreness dissipated. ECF 61-2, PageID.402.

Approximately two days prior to these events, Defendant Frenchen approached Plaintiff's door and told him that "exhibitionists" were going to be put in restraints. ECF 1, PageID.7-8. Plaintiff responded that he was not going to be put in restraints and that they were not supposed to be doing that. ECF 1, PageID.8. Defendant Frenchen responded that "your [sic] going in restraints Jack off Jay." ECF 1, PageID.8.

Pursuant to a previous Opinion and Order, Plaintiff has three remaining claims in this case: (1) Defendants Tribley, Haataja, Frenchen, Chappel, Maki, and Casper subjected Plaintiff to cruel and unusual punishment when they performed a strip search and placed Plaintiff in soft restraints for fifteen hours without access to water, food, or a bathroom; (2) Defendant Casper was deliberately indifferent to Plaintiff's serious medical needs when he refused to check Plaintiff's restraints which left him in pain; and (3) Defendants Tribley, Chappel, Haataja, Frenchen, Capser, and Maki conspired against Plaintiff to violate his First Amendment rights. ECF 42. Defendants have now filed a motion for summary judgment based on Federal Rules of Civil Procedure 56A. ECF 60.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff asserts a claim alleging that Defendants Tribley, Chappel, Haataja, Frenchen, Maki, and Casper used excessive force that amounted to cruel and unusual punishment in violation of the Eight Amendment.  Specifically, Plaintiff argues that a strip search and the use of soft restraints for fifteen hours was an excessive use of force for covering his jail door window.  Plaintiff also notes that the Michigan Department of Corrections Policy Directive suggests that removing all paper from a cell is appropriate punishment for the repeated covering of cell windows.  ECF 73-1, PageID.475.  Defendants contend that the use of the restraints was necessary because Plaintiff was repeatedly disobeying orders and obstructing the view of his windows.  According to Defendant Haataja's affidavit, a prisoner that covers his window with paper can be a serious safety risk to the facility.  ECF 61-4, PageID.408.  Officers need to be able to look into cell windows to make sure that prisoners are not engaging in self injurious behavior or fashioning weapons.  ECF 61-4, PageID.408.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of restraints must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 130 S. Ct. at 1178. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing

*Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995). Likewise, prisoners may be strip searched under circumstances that are reasonably related to the legitimate penological interest of security and order. *See Roden v. Sowders*, 84 F. App'x 611, 613 (6th Cir. Dec. 15, 2003) (citing Cornwell v. Dahlberg, 963 F.2d 912, 916 (6th Cir. 1992)).

In this case, Defendants had a penological justification for conducting a strip search and placing Plaintiff in soft restraints because Plaintiff repeatedly covered his window with paper. Although Plaintiff complains that the restraints were too tight, registered nurses checked the restraints when they were initially applied and again several hours later. Moreover, the video exhibit shows that Plaintiff was capable of moving around in the restraints. According to Defendant Haataja's affidavit, a prisoner in soft restraints can still use the restroom in his cell and access the sink for water. Finally, Plaintiff admitted in his deposition that even if he was not in restraints, he would not have received any meals during that time. Plaintiff may have been uncomfortable but the restraints are among those conditions of prison life that are "restrictive and even harsh" without rising to the level of unconstitutional punishment. *Rhodes*, 452 U.S. at 347.

Next, Plaintiff alleges that Defendant Casper was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, Plaintiff states that the next morning, Defendant Casper refused to adjust the restraints and walked away when Plaintiff said he was in significant pain. Defendants contend that Plaintiff's restraints were

checked in the evening and Plaintiff was not in any pain. Moreover, Defendants point out that Plaintiff admitted in his deposition that he only had minor back pain, which he took Tylenol to resolve.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In this case, Plaintiff has failed to meet the objective component—that the medical need was sufficiently serious. In his complaint, Plaintiff alleges that he was in "back pain and his thighs ached to stretch." ECF 1, PageID.9. Plaintiff later states that he "ended up pulling [his] neck, right shoulder, and upper back." ECF 1, PageID.13. In his deposition, Plaintiff testified that he was "just sore" and that the soreness went away with the help of Tylenol. ECF 61-2, PageID.402. However, in Plaintiff's Response to the Motion for Summary Judgement, Plaintiff stated that his serious medical need was his "wrist and hand pain." ECF 73, PageID.466. It should also be noted that after approximately six hours in the restraints, a registered nurse checked Plaintiff's restraints and determined Plaintiff was in "no distress." ECF 61-6, PageID.421. Even when viewing the facts in the light most favorable to the Plaintiff, a rational trier of fact would not conclude that Plaintiff had a sufficiently serious medical need that required immediate attention.

Plaintiff also asserts a claim of civil conspiracy against Defendants Tribley, Chappel, Haataja, Frechen, Maki, and Casper for depriving Plaintiff of his First Amendment rights. Although it is not completely clear, Plaintiff appears to be arguing that Defendants conspired to retaliate against him after Plaintiff threatened to file a grievance because he did not receive his law books. Alternatively, Plaintiff may be arguing that the Defendants retaliated against him for trying to gain access to the courts. Plaintiff asserts that the retaliatory conduct was being placed in soft restraints for fifteen hours. Defendants contend that because Plaintiff was found guilty on a misconduct charge, the retaliation claim should be dismissed. Moreover, Defendants argue that Plaintiff has stated only conclusory allegations to support his conspiracy claim.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007) (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). It is also well-established that a finding of guilt on a misconduct charge essentially "checkmates" a

retaliation claim. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action).

In this case, Plaintiff's allegations of conspiracy are conclusory and speculative. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. Instead, Plaintiff asserts that everyone "came together in agreement" to violate his constitutional rights. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Further, Plaintiff was found guilty of the misconduct ticket that Defendant Maki issued him. Thus, Plaintiff cannot claim that the misconduct ticket was retaliatory conduct.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment. Accordingly, it is recommended that Defendant's Motion for Dismissal and/or Summary Judgment (Docket #60) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of

receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: August 17, 2016  /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
U.S. MAGISTRATE JUDGE